Kelly E. Nokes, *applicant for pro hac vice*
Colorado Bar No. 51877
Western Environmental Law Center
P.O. Box 218
Buena Vista, Colorado 81211
Tel: 575-613-8051
nokes@westernlaw.org

Matthew K. Bishop, *applicant for pro hac vice*
Montana Bar No. 9968
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59603
Tel: 406-324-8011
bishop@westernlaw.org

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Western Watersheds Project, a non-profit organization; and Wilderness Watch, a non-profit organization, | No. |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| Sonny Perdue, as Secretary of the United States Department of Agriculture; the United States Department of Agriculture, a federal department; the United States Forest Service, a federal agency; Erick Stemmerman, as District Ranger for the Glenwood Ranger District on the Gila National Forest; and Ed Holloway Jr., as District Ranger for the Clifton Ranger District on the Apache-Sitgreaves National Forest, | |
| Federal Defendants. | |

# INTRODUCTION

1.   Western Watersheds Project and Wilderness Watch (collectively, "Plaintiffs"), bring this civil action for declaratory relief against the above-named Federal Defendants (collectively, the "Forest Service") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, for violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*

2.   This case challenges the Forest Service's Stateline Range Environmental Assessment and three associated Decision Notices and Findings of No Significant Impacts authorizing livestock grazing on fourteen allotments expanding over 270,000 acres in the Apache-Sitgreaves and Gila National Forests in Arizona and New Mexico (collectively, the "Stateline project"). The Stateline project authorizes nearly 4,000 head of cattle or horses for the next ten years, as well as a number of related activities, including the construction of over 16 miles of new fencing, the installation of 27 water storage tanks and 51 water troughs, the construction of 46.5 miles of pipeline to transport water, the installation of five new groundwater wells, one trick tank, three new cattleguards, and four new corrals.

3.   The Stateline project was authorized in the heart of the Greater Gila bioregion which is one of the Southwest's most treasured and ecologically critical landscapes. The Greater Gila bioregion is also central to the survival and recovery of endangered Mexican wolves in the wild and home to ecologically important water resources, riparian habitats, and wilderness lands.

1    4.   In authorizing the Stateline project, however, the Forest Service failed to

2    prepare an Environmental Impact Statement ("EIS") as required by NEPA. 42 U.S.C. §

3    4332(2)(C). Nor did the Forest Service consider an adequate range of alternatives, 40

4    C.F.R. § 1502.14, or adequately disclose, consider, and analyze the direct, indirect, and

5    cumulative impacts of the Stateline project in its Environmental Assessment ("EA"). 42

6    U.S.C. § 4332(2)(C)(i)–(v); 40 C.F.R. §§ 1502.14(a), 1502.16, 1508.7, 1508.8, 1508.14.

7    5.   Plaintiffs are thus compelled to bring this civil action for declaratory and

8    injunctive relief. The Forest Service's authorization of the Stateline project is arbitrary,

9    capricious, an abuse of discretion, and not in accordance with NEPA and the APA. 5

10   U.S.C. § 706(2)(A).

**JURISDICTION AND VENUE**

11

12   6.   This Court has jurisdiction over this action under 28 U.S.C. § 1331, and 5

13   U.S.C. § 704.

14   7.   This Court has the authority to review the Forest Service's actions or inactions

15   complained of herein, and grant the relief requested, under the APA, 5 U.S.C. § 706.

16   8.   All requirements for judicial review required by the APA are satisfied.

17   Plaintiffs exhausted any and all administrative remedies provided by the Forest Service.

18   9.   The relief sought is authorized by 28 U.S.C. §§ 2201–2202, and 5 U.S.C. § 706.

19   10. Venue is proper in this Court under 28 U.S.C. § 1391(e).

20   11. Plaintiffs satisfy the minimum requirements for Article III standing to pursue

21   this civil action. Plaintiffs – including their members, supporters, and staff – have

22   suffered and continue to suffer injuries to their interests in using and conserving the

1    portions of the Gila and Apache-Sitgreaves National Forests impacted by the Stateline

2    project. These injuries are caused, in part, by the Forest Service's decisions and

3    underlying environmental analysis. A favorable ruling from this Court will redress

4    Plaintiffs' injuries. There is a present and actual controversy between the Parties.

5                                        **PARTIES**

6         12. Plaintiff, WESTERN WATERSHEDS PROJECT ("WWP"), is a non-profit

7    corporation founded in 1993, which is headquartered in Idaho and has additional offices

8    or staff in Arizona, California, Wyoming, Montana, Nevada, and Oregon, and is

9    dedicated to protecting and conserving the public lands and natural resources across the

10   American West. WWP's board members, staff, and members regularly seek out the

11   public lands and wildlife in the Greater Gila bioregion, specifically in the Gila and

12   Apache-Sitgreaves National Forests, for recreational, scientific, educational, and other

13   pursuits, and will continue to do so in the future. WWP has long-standing interests in

14   preserving and conserving the wildlands and wildlife in the Stateline project area.

15        13. Plaintiff, WILDERNESS WATCH, is a non-profit corporation founded in

16   1989, which is headquartered in Missoula, Montana and has additional offices or staff in

17   Idaho and Minnesota. Wilderness Watch is dedicated solely to defending and keeping

18   wild the nation's more than 111-million-acre National Wilderness Preservation System.

19   Wilderness Watch's board members, staff, and members regularly seek out and enjoy the

20   wilderness qualities within the Greater Gila bioregion, specifically in the Gila and Blue

21   Range designated wilderness areas, as well as the Blue Range Primitive Area (which is

22   managed as wilderness), located on the Gila and Apache-Sitgreaves National Forests.

1     Wilderness Watch's board members, staff, and members enjoy the aesthetic, recreational,

2     scientific, and educational opportunities afforded by the wilderness and surrounding

3     public lands in the Greater Gila bioregion, and will continue to do so into the future.

4     Wilderness Watch has a long-standing interest in protecting, conserving, and restoring

5     the wilderness qualities and wildlife resources in the Stateline project area.

6           14. WWP's and Wilderness Watch's (collectively, "Plaintiffs'") staff, members,

7     and supporters have a strong interest in protecting, preserving, and restoring the natural,

8     biological, and cultural integrity of the Greater Gila bioregion, and in particular, the Gila

9     and Apache-Sitgreaves National Forests. Protecting the resources of the Forests and

10    other public lands included in the Greater Gila bioregion is a major program effort for

11    Plaintiffs. Plaintiffs report to their members, the public at large, and the press on the

12    status of, and threats to the Greater Gila bioregion. Plaintiffs have prepared and

13    submitted comment letters and objections on various Forest Service projects, activities,

14    and/or plans that may adversely impact the Forests' resources. Plaintiffs submitted

15    comments during the NEPA process for the Stateline project and filed formal objections

16    to the Forest Service's decisions.

17         15. Plaintiffs and their members frequently communicate with various Forest

18    Service officials, including biologists and other staff members, about public lands

19    management issues within and/or affecting the Gila and Apache-Sitgreaves National

20    Forests. Plaintiffs and their members frequently raise concerns about the direct, indirect,

21    and cumulative impacts of various land management actions on the Forests' resources,

22    including livestock grazing.

16. Plaintiffs and their members have used and will continue to regularly and repeatedly use the Gila and Apache-Sitgreaves National Forests. Plaintiffs and their members use the Forests for wildlife observation, research, aesthetic enjoyment, hiking, bird watching, historic and cultural exploration, and other recreational, scientific, and educational activities.  Plaintiffs and their members derive scientific, recreational, conservation, and aesthetic benefits from using the Forests. Plaintiffs and their members enjoy viewing (and being aware of) wildlife in the area and experiencing the Forests' cultural and historic significance, designated wilderness, lands with wilderness characteristics, primitive areas, inventoried roadless areas, rivers and riparian habitats, and diverse plant communities. Plaintiffs are also keenly interested in these Forests because they are currently the only public lands in the United States occupied by Mexican gray wolves. For Plaintiffs and their members, using the Forests in conjunction with working to protect, preserve, and restore the Forests' resources is a key component of their enjoyment of their visits to the area.  Plaintiffs and their members will continue working for the protection and restoration of the Forests' resources. Filing this civil action to ensure compliance with federal law is part of this effort.

17. The Forest Service's decisions authorizing continued livestock grazing and related activities on the Gila and Apache-Sitgreaves National Forests has harmed and continues to harm the interests of Plaintiffs and their members. The Forest Service's decisions authorize the continuation of widespread livestock grazing and related activities (including constructing 16.7 miles of new fencing; the installation of 27 water storage tanks and 51 water troughs; the construction of 46.5 miles of pipeline to transport water;

1    the installation of five new wells, three solar panels to generate the wells, one trick tank,

2    three new cattleguards, and four new corrals) on fourteen individual allotments across

3    approximately 271,665 acres in the Greater Gila bioregion. These decisions have harmed

4    and continue to harm the ability of Plaintiffs and their members to use and enjoy the

5    Forests for scientific, recreational, conservation, cultural, historic, and aesthetic purposes,

6    and Plaintiffs' efforts to protect, preserve, and restore the Forests' natural resources.

7         18. In 2009, 2010, 2011, 2012, 2017, 2018, and 2019, Plaintiffs and other

8    members of the public toured portions of the Alma, Blackjack, Dry Creek, and

9    Pleasanton allotments, all of which are included within the Stateline project. Plaintiffs

10   observed detrimental impacts to the Forests' crucial habitat for Mexican wolves and

11   other wildlife, water resources, wilderness values, and riparian areas from livestock

12   grazing and related activities.

13        19. The Forest Service's approval of the Stateline project, without complying with

14   the law as outlined in this complaint, has resulted in uninformed decisions and is creating

15   an increased risk of actual, threatened, and imminent harm to the interests of Plaintiffs

16   and their members in experiencing, conserving, protecting, and restoring the resources of

17   the Greater Gila bioregion, and specifically, the resources of the portions of the Apache-

18   Sitgreaves and Gila National Forests impacted by the Stateline project.  The Forest

19   Service's failure to comply with the law also significantly increases the risk of unnecessary

20   and avoidable harm to the Forests' natural, biological, wildlife, riparian and historic

21   resources and Plaintiffs' interests in protecting, preserving, and using those resources.

20. The Forest Service's failure to comply with the law, as outlined in this complaint, has harmed and continues to harm the interests of Plaintiffs and their members. Plaintiffs bring this action on behalf of themselves and their adversely affected members and supporters. If this Court issues the relief requested, the harm to Plaintiffs' interests will be alleviated and/or lessened.

21. Defendant SONNY PERDUE is sued in his official capacity as Secretary of the United States Department of Agriculture. As Secretary, Mr. Perdue is the federal official with responsibility for all Forest Service officials' inactions and/or actions, including those challenged in this complaint.

22. Defendant UNITED STATES DEPARTMENT OF AGRICULTURE is the federal agency responsible for applying and implementing the federal laws and regulations challenged in this complaint.

23. Defendant, the UNITED STATES FOREST SERVICE is an agency within the United States Department of Agriculture that is responsible for applying and implementing the federal laws and regulations challenged in this complaint.

24. Defendant ERICK STEMMERMAN is sued in his official capacity as District Ranger for the Glenwood Ranger District on the Gila National Forest. As District Ranger, Mr. Stemmerman is the federal official with responsibility for the Forest Service officials' inactions and/or actions regarding the Glenwood Ranger District on the Gila National Forest challenged in this complaint.

25. Defendant ED HOLLOWAY JR. is sued in his official capacity as District Ranger for the Clifton Ranger District on the Apache-Sitgreaves National Forest. As

1      District Ranger, Mr. Holloway is the federal official with responsibility for the Forest

2      Service officials' inactions and/or actions regarding the Clifton Ranger District on the

3      Apache-Sitgreaves National Forest challenged in this complaint.

4                                          **BACKGROUND**

5      ***The Stateline Project Area in the Greater Gila Bioregion***

6              26. The Greater Gila bioregion straddles the central border between Arizona and

7      New Mexico in the heart of the American Southwest. The Greater Gila bioregion

8      includes large swaths of remote, federal public lands managed by the Forest Service. The

9      Greater Gila bioregion includes portions of the Gila and Apache-Sitgreaves National

10     Forests.



11

1    27. The Stateline project covers over 270,000 acres of the ecologically rich and

2    sensitive Greater Gila landscape.

3    28. The Greater Gila bioregion is home to the nation's first designated wilderness

4    area under the 1964 Wilderness Act – the Gila Wilderness in New Mexico. The Greater

5    Gila bioregion is home to numerous other ecologically critical special management areas,

6    including the Blue Range Primitive Area in Arizona, and the Blue Range Wilderness.

7    29. The Stateline project area includes portions of the Gila Wilderness and the

8    Blue Range Wilderness. Over 21,589 acres of four of the Stateline project allotments are

9    located within these wildernesses.

10    30. The Stateline project area includes 33,495 acres of the Blue Range Primitive

11    Area, which is generally managed as wilderness. The Stateline project authorizes new

12    range infrastructure in the Blue Range Primitive Area. The Stateline project authorizes

13    the installation of three water storage tanks and three troughs in the Blue Range

14    Primitive Area. The Stateline project authorizes 2.9 miles of pipeline to transport water in

15    the Blue Range Primitive Area.

16    31. The Greater Gila bioregion contains numerous miles of inventoried roadless

17    areas ("roadless areas"). Inventoried roadless areas are managed to protect and conserve

18    their roadless character. The Stateline project authorizes grazing and related range

19    projects in roughly 79,900 acres of the Greater Gila bioregion's roadless areas, including

20    portions of the Hell Hole, the Lower San Francisco, Mitchell Peak, and the Sunset

21    roadless areas.

1    32. The Greater Gila bioregion provides numerous opportunities for recreation.

2    The Greater Gila bioregion is locally, regionally, nationally, and internationally known for

3    its hiking, camping, boating, and fishing opportunities. Developed recreation occurs on

4    five of the fourteen allotments included in the Stateline project. There are two developed

5    campgrounds, twelve trailheads, and 121-miles of trails located in the Stateline project

6    area.

7    33. The Greater Gila bioregion is known for its unique historical and cultural

8    significance. There are 90 documented cultural resource sites located in the Arizona

9    portion of the Stateline project area, and 261 cultural sites in the New Mexico portion of

10   the Stateline project area.

11   34. All 14 allotments included within the Stateline project contain significant

12   cultural resources. Within the Arizona portions of the project, 90 sites have been

13   recorded, including: 61 prehistoric sites, 20 historic sites, and 7 multicomponent sites. In

14   the New Mexico portions of the project, 261 sites have been recorded, including: 167

15   prehistoric sites, 77 historic sites, and 17 multicomponent sites.

16   35. The Greater Gila bioregion contains limited, but essential, water resources

17   that lend to the region's unique ecological significance.

18   36. The San Francisco River runs through the heart of the Greater Gila bioregion.

19   The San Francisco River is adjacent to ten of the fourteen allotments included in the

20   Stateline project.

21   37. The Stateline project area includes three stretches of rivers that have been

22   deemed eligible for inclusion in the National Wild and Scenic Rivers system: Little Blue

Creek and the San Francisco River in Arizona, and Spruce Creek in New Mexico. These waterways are among the Greater Gila bioregion's most magnificent features.

38. Six river stretches within the Stateline project area in New Mexico are designated as Outstanding National Resource Waters ("ONRWs"). An ONRW is a waterbody that receives special protections to preserve water quality for the benefit of future generations. Designated ONRWs in the Stateline project area include those portions of Little Whitewater Creek, Big Dry Creek, Spruce Creek, Spider Creek, Little Dry Creek, and Sacaton Creek located in wilderness areas in New Mexico.

39. The Greater Gila bioregion provides a diverse array of habitat and resources for abundant populations of wildlife and plant species especially adapted to the unique, high-desert landscape of the American Southwest.

40. The Stateline project area is home to 26 sensitive species.

41. The Stateline project area is home to numerous game species, including: bighorn sheep, elk, mule deer, Coues whitetail deer, pronghorn antelope, black bears, mountain lions, javelinas, and turkeys.

42. The Stateline project area provides habitat for critically imperiled species protected by the Endangered Species Act ("ESA").

43. The Stateline project area includes habitat for the endangered Southwestern willow flycatcher.

44. The Stateline project area includes habitat for the endangered Gila chub.

45. The Stateline project area includes habitat for the endangered loach minnow.

46. The Stateline project area includes habitat for the endangered spikedace.

47. The Stateline project area includes habitat for the threatened Mexican spotted owl.

48. The Stateline project area includes habitat for the threatened Western yellow-billed cuckoo.

49. The Stateline project area includes habitat for the threatened Chiricahua leopard frog.

50. The Stateline project area includes habitat for the threatened Northern Mexican garter snake.

51. The Stateline project area includes habitat for the threatened Gila trout.

52. The Stateline project area includes habitat for the endangered Mexican gray wolf. The Stateline project area is occupied by Mexican wolves.

53. Mexican wolves are a subspecies of gray wolf. Also referred to as "lobos," Mexican wolves are the smallest of North America's gray wolves. Mexican wolves are one of the nation's most endangered species.

54. Mexican wolves need large expanses of wild, remote landscapes with ample prey availability to survive and recover throughout the species' historic range.

55. The Greater Gila bioregion includes the core recovery area for endangered Mexican wolves, a species protected under the ESA and reintroduced into the region in 1998.

56. The entire Stateline project lies within the heart of Management Zone 1 of the Mexican Wolf Recovery Area. Management Zone 1 of the Mexican Wolf Recovery Area represents some of the most suitable habitat for Mexican wolf recovery in the American

Southwest. Management Zone 1's large size, remoteness, mountainous terrain, and ample prey resource availability, make it one of the most critical areas for furthering Mexican wolf recovery efforts in the wild.

57. Human caused mortalities – including illegal killing and trapping, and management removals due to conflicts with livestock – are among the leading threats to the recovery of the Mexican wolf in the wild.

58. Mexican wolves are a critically imperiled species. Only an estimated 163 Mexican wolves existed in the wild in Arizona and New Mexico as of the last count in early 2020.

59. The habitat provided by the Stateline project area is critical to the Mexican wolves' survival and recovery in the wild.

***The Service's Authorization of the Stateline Project***

60. The Forest Service published an Environmental Assessment ("EA") for the Stateline project in June 2019.

61. The Forest Service chose to issue three separate Decision Notices and Finding of No Significant Impacts ("FONSIs") for the Stateline project EA. The three Decision Notices/FONSIs were issued between November 2019 and January 2020.

62. On November 15, 2019, the Forest Service issued a Decision Notice/FONSI for the Glenwood Ranger District portion of the Stateline Range NEPA project. This Decision Notice/FONSI covers the Alma, Citizen, Dry Creek, Holt Gulch, Pleasanton, Potholes, and Sacaton Allotments in the Glenwood Ranger District on the Gila National Forest.

63. On November 21, 2019, the Forest Service issued a Decision Notice/FONSI for the Alma Mesa, Copperas, Keller Canyon, and Lop Ear Allotments of the Stateline Range NEPA project. These allotments are all located within the Clifton Ranger District on the Apache-Sitgreaves National Forest.

64. On January 27, 2020, the Forest Service issued a Decision Notice/FONSI for the Blackjack, Hickey, and Pleasant Valley Allotments of the Stateline Range NEPA project. These allotments are all located within the Clifton Ranger District on the Apache-Sitgreaves National Forest.

65. The Stateline project discussed in the EA (and covered by the three Decision Notices/FONSIs) covers livestock grazing for the next ten years on fourteen grazing allotments. This includes seven allotments on the Apache-Sitgreaves National Forest, including the: (1) Alma Mesa, (2) Blackjack, (3) Copperas, (4) Hickey, (5) Keller Canyon, (6) Lop Ear, and (7) Pleasant Valley; and on seven allotments in the Glenwood Ranger District on the Gila National Forest, including the: (1) Alma, (2) Citizen, (3) Dry Creek, (4) Holt Gulch, (5) Pleasanton, (6) Potholes, and (7) Sacaton.

66. The fourteen allotments included in the Stateline project are spread across 271,665 acres of National Forest lands and range in elevation from 4,400 to 10,491 feet.

67. The Forest Service selected Alternative 2 of the Stateline project EA. This alternative permits an overall number of 3,808 to 3,838 head of cattle or horses, depending on the season, for a total of 44,186 Animal Unit Months ("AUMs"). An AUM is the amount of forage needed by one animal unit for one month. The Stateline project

authorizes twelve allotments to be stocked with livestock year-round. The Stateline project authorizes two allotments to be used by livestock at certain times of the year.

68. The selected alternative also includes a number of new infrastructure projects. The Stateline project authorizes 16.7 miles of new fencing. The Stateline project authorizes the installation of 27 water storage tanks. The Stateline project authorizes the installation of 51 water troughs. The Stateline project authorizes the construction of 46.5 miles of pipeline to transport water. The Stateline project authorizes the installation of five new wells. The Stateline project authorizes the installation of one new trick tank. The Stateline project authorizes the installation of three new cattleguards. The Stateline project authorizes the installation of four new corrals.

69. The impacts of livestock grazing in the Greater Gila bioregion and southwestern U.S., including in the Stateline project area, are well known and well documented. Direct effects from livestock grazing to the landscape include trampling of native vegetation. Direct effects from livestock grazing include the spread of invasive weed species. Direct effects from livestock grazing to the landscape include reducing forage availability for native wildlife. Direct effects from livestock grazing reduces habitat suitable for native wildlife through social displacement. Direct effects from livestock grazing to the landscape include riparian area damage. Direct effects from livestock grazing to the landscape include damage to soil surfaces and increased erosion.

70. Many of these direct effects from livestock grazing are particularly exacerbated by the proximity of water sources, as livestock tend to concentrate near water sources and thus cause greater damage near water sources.

71. Direct effects from livestock grazing to the landscape include detracting from the wilderness character of the region.

72. Livestock grazing has significant impacts upon the wilderness character and values of designated wildernesses and other special management areas in the Greater Gila bioregion. The presence of livestock detracts from the remote, wild character of these areas which are supposed to be managed specifically for these unique, and valuable, traits. The Stateline project impacts 79,900 acres of roadless areas. The Stateline project impacts 21,589 acres of designated wilderness areas. The Stateline project impacts 33,495 acres of the Blue Range Primitive Area special management area.

73. Livestock grazing impacts the limited water resources and availability in the Greater Gila bioregion. The Greater Gila bioregion is impacted by a period of chronic drought as the result of warming climate trends severely limiting the region's already limited supplies of fresh water. Infrastructure associated with the Stateline project, such as wells, spring pumps, pipelines, and storage tanks, remove water from the natural system for livestock purposes, and limits the availability of water resources for the other plants and wildlife that call the region home.

74. The Stateline project authorizes numerous water infrastructure projects across the project area. The Stateline project authorizes the installation of 27 water storage tanks.  The Stateline project authorizes the installation of 51 water troughs. The Stateline project authorizes the construction of 46.5 miles of pipeline to transport water. The Stateline project authorizes the installation of five new wells. The Stateline project authorizes the installation of one trick tank.

17  |  COMPLAINT

75. The Stateline project's water infrastructure will distribute and concentrate the impacts of livestock grazing to areas that were previously without water sources and unused by cattle.

76. Livestock fencing has significant impacts on local wildlife in the region. Fencing for livestock inhibits the ability of wildlife to move and migrate freely across the landscape. Fencing for livestock is deadly for wildlife.

77. The Stateline project involves the construction of 16.7 miles of new fencing infrastructure across the project area.

78. The Stateline project relies on fenced exclosures to keep livestock out of important riparian habitats along the San Francisco and Blue Rivers. The Forest Service acknowledges that no exclosure or fence is 100 percent effective.

79. The Greater Gila bioregion is experiencing the compounded impacts of a long history of over-grazing and the failure to address the issue of trespass livestock and their resultant impacts upon the environment. The Forest Service recognizes that fencing and exclosures are not always effective. The Forest Service has not undertaken an alternative management strategy to address the impacts of livestock grazing where they are not permitted.

80. Livestock grazing has numerous detrimental direct and indirect impacts upon the Greater Gila's fragile high-desert ecosystem and the wildlife that rely upon it.

81. The Stateline project authorizes livestock grazing in the heart of vital habitats for endangered Mexican wolves and other wildlife.

82. Mexican wolves are frequently lethally removed or permanently relocated from their habitat primarily due to alleged conflicts with permitted livestock. Since the beginning of the Mexican wolf recovery program in 1998 until 2018 (the last year official numbers are available) a total of 193 Mexican wolves have been removed from the wild. The management removals of Mexican wolves from the wild in the Greater Gila are having (and will continue to have, as the result of the Stateline project authorizations) a significant impact on efforts to recover the species in the heart of the primary recovery zone specifically allocated for such purpose. The Stateline project will likely result in more Mexican wolf management removals. The Stateline project will harm efforts to recover Mexican wolves in the wild.

83. The Stateline project maintains and exacerbates the detrimental impacts of livestock grazing upon the Gila and Apache-Sitgreaves National Forests' resources for at least the next ten years.

## FIRST CAUSE OF ACTION

### (Violation of NEPA – Failure to prepare an EIS)

84. Plaintiffs incorporate all preceding paragraphs.

85. NEPA requires the Forest Service to prepare an Environmental Impact Statement ("EIS") for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In deciding whether or not to prepare an EIS, the Forest Service must consider both the context and intensity of the proposed action. 40 C.F.R. § 1508.27. Context refers to the scope of the proposed action, including the interests affected. 40 C.F.R. § 1508.27(a). Assessing context requires that an action be

1    "analyzed in several contexts such as society as a whole (human, national), the affected

2    region, the affected interests, and the locality[,]" with both short- and long-term effects

3    being relevant. 40 C.F.R. § 1508.27(a). Intensity "refers to the severity of the impact,"

4    and requires consideration of a number of factors, including: beneficial and adverse

5    impacts; the degree to which the proposal affects public health and safety; unique

6    characteristics of the geographic area, such as proximity to ecologically critical areas and

7    cultural resources; the degree to which effects are likely to be controversial, highly

8    uncertain, or involve unique or unknown risks; the precedential nature of the action;

9    whether the action is related to other actions with cumulatively significant impacts; and

10   the degree of adverse effects on species listed as endangered or threatened under the

11   ESA. 40 C.F.R. § 1508.27(b).

12          86. The Stateline project will result in adverse impacts to plant communities and

13   riparian area health. Livestock grazing causes soil compaction and increases the potential

14   spread of noxious and invasive weeds in ecologically sensitive areas. The project area is

15   already facing water resource limitations due to extended drought conditions and the

16   impacts of climate change, and the Stateline project adds further adverse impacts to the

17   project area's already stressed landscape.

18          87. The Stateline project presents concerns for public health and safety,

19   specifically, due to the negative water quality impacts associated with the authorized

20   levels of livestock grazing. At least four waterbodies in the project area are listed on the

21   applicable state 303(d) list for impairment: on the Apache-Sitgreaves, (1) the Blue River

22   (25.1 miles from Strayhorse Creek to San Francisco River) is listed as impaired due to *E.*

1    *Coli*; (2) the San Francisco River (19.4 miles from Blue River to Limestone Gulch) is

2    listed as impaired due to *E. Coli*; (3) the Gila River (11.2 miles from Skully Creek to San

3    Francisco River) is listed as impaired due to Selenium (metals); and on the Gila National

4    Forest, (4) the San Francisco River (8.9 miles from Dry Creek to Whitewater Creek) is

5    listed as impaired due to benthic macroinvertebrates bioassessments. The *E. Coli*

6    impairments, in particular, are especially threatening to public health and safety in the

7    project area. *E. Coli* impairments can be directly attributed to livestock wastes and

8    defecation. The Stateline project's continuing authorization of livestock grazing allows

9    grazing animals to continue to negatively impact the project area's water resources by

10   trampling and defecation, in addition to increased allowance of water withdrawals. The

11   impacts of continued livestock grazing authorization by the Stateline project will only

12   further exacerbate the already impaired water quality conditions of waterways in the

13   project area.

14        88. The Stateline project will impact the unique characteristics of the Greater Gila

15   bioregion, including ecologically critical areas and cultural resources within the project

16   area's vicinity. The project area lies in the heart of the famous Greater Gila bioregion –

17   an area known worldwide for its unique, high-desert and mountain landscape, as well as

18   its abundance of unique ecological and biological resources. The project area includes

19   portions of two federally designated wilderness areas, including the nation's first, the Gila

20   Wilderness; as well as the Blue Range Wilderness. Over 21,589 acres of four of the

21   Stateline project allotments are located within these wildernesses. The project area also

22   includes 33,495 acres of the Blue Range Primitive Area, which is generally managed as

wilderness. Significant range improvement activities authorized by the Stateline project will occur in the Blue Range Primitive Area, including: the construction of 1.6 miles of fence, the installation of three water storage tanks, three troughs, a solar panel to operate a pump, and 2.9 miles of pipeline for water transport. Roughly 79,900 acres of inventoried roadless areas are also within the project boundaries, including portions of the Hell Hole, Lower San Francisco, Mitchell Peak, San Francisco, and Sunset roadless areas. The project area also includes three stretches of rivers that have been deemed eligible for inclusion in the National Wild and Scenic Rivers system: Little Blue Creek and the San Francisco River in Arizona, and Spruce Creek in New Mexico. Six creek stretches within the project in New Mexico are designated as ONRWs: those portions of Little Whitewater Creek, Big Dry Creek, Spruce Creek, Spider Creek, Little Dry Creek, and Sacaton Creek located in wilderness. The entire project lies within the heart of Management Zone 1 for the Mexican Wolf Recovery Area. This region represents some of the most suitable habitat for endangered Mexican wolf recovery in the American Southwest. Additionally, all 14 allotments included within the project contain significant cultural resources. Within the Arizona portions of the project, 90 cultural sites have been recorded, including: 61 prehistoric sites, 20 historic sites, and 7 multicomponent sites. In New Mexico, 261 cultural sites have been recorded in the project area, including: 167 prehistoric sites, 77 historic sites, and 17 multicomponent sites.

89. The Stateline project is highly controversial. Livestock grazing is a controversial activity in the water-strained regions of the American Southwest, and in the project area in particular, due to the negative impacts upon the natural environment and

1    the multiple-use mandate of federally-managed public lands upon which livestock grazing

2    is authorized to occur. The unique wildlife and wilderness resources of the Greater Gila

3    bioregion – including the project area being the epicenter of efforts to restore

4    endangered Mexican wolves to the wild – render grazing on this important public

5    landscape even more uniquely controversial. Agency removals of Mexican wolves in

6    response to livestock conflicts in the project area has been and remains a major threat to

7    the subspecies, and significant public controversy often arises whenever such removals

8    are carried out. Agency removals of Mexican wolves in response to livestock conflicts in

9    the project area presents significant scientific controversy because these removals can

10   further threaten the already dire genetic health of the species in the wild.

11        90. The Stateline Project may have precedential effect. The Forest Service decided

12   to lump together 14 separate allotments across three national forests in two states,

13   without explanation for why these individual allotments should all be considered together

14   in the Stateline project. The Forest Service did not explain why it elected to include some

15   allotments and not others in the region within the Stateline project.

16        91. The Stateline project will have significant cumulative impacts. The Stateline

17   project's continuing authorization of livestock grazing on an already drought-stricken,

18   fragile landscape that has been consistently damaged by livestock grazing activities for

19   many generations will result in numerous and significant impacts. The Stateline project

20   will result in cumulatively significant impacts when considered against the impacts of

21   climate change – those impacts from higher temperature regimes, increased wildfire risk,

22   and prolonged drought that are impending as the climate continues to change, and that

are already visibly occurring. The Stateline project will result in cumulatively significant impacts when considered against the impacts of other water withdrawal and diversion projects in the region. The Stateline project will result in cumulatively significant impacts when considered against the impacts of fragmentation and wildlife connectivity hindrances from fencing and grazing infrastructure improvements in and around the project area. The Stateline project will result in cumulatively significant impacts when considered against the backdrop of a long history of abuse and chronic violations of grazing permits, and the documented failure of exclusionary devices in and around the project area.

92. The Stateline project will have adverse impacts to listed species. The Stateline project will impact federal- and state- protected species. Mexican wolves, Mexican spotted owls, Chiricahua leopard frogs, and a number of critically imperiled aquatic species are all put at added risk due to the harmful impacts of livestock grazing, as authorized by the Stateline project, within their habitats. The project area is home to five federally endangered and six federally threatened species listed under the ESA. The project area is also home to 26 sensitive species.

93. The Stateline project is a major federal action significantly affecting the quality of the human environment.

94. The EA for the Stateline project fails to properly consider the context and intensity of the proposed action.

95. The EA for the Stateline project fails to consider the scope of the project and the interests affected.

96. The EA for the Stateline project fails to consider the intensity of the project, including factors such as: adverse impacts; public health and safety; unique characteristics, such as proximity to ecologically critical areas and cultural resources; whether the project is highly controversial; the precedential nature of the decisions; cumulatively significant impacts; and adverse impacts to protected species.

97. The Forest Service's decision and/or failure to prepare an EIS is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and/or constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706(2)(A), 706(1).

## SECOND CAUSE OF ACTION

### (Violation of NEPA – Inadequate range of alternatives)

98. Plaintiffs incorporate all preceding paragraphs.

99. NEPA's alternatives analysis is the "heart" of the NEPA process. 40 C.F.R. § 1502.14. Alternatives should "sharply defin[e] the issues and provid[e] a clear basis for choice among options by the decisionmaker and public." *Id.* NEPA requires the Forest Service to "[r]igorously explore and objectively evaluate all reasonable alternatives eliminated from detailed study, and for alternatives eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a).

100. The EA for the Stateline project area does not evaluate and consider a reasonable range of alternatives.

101. The EA considered only two alternatives. Alternative 1 analyzed "no action," meaning no grazing would be authorized in the project area. Alternative 2

1    analyzed the proposed – and subsequently adopted – action authorizing continued

2    grazing in the project area.

3           102.      Alternative 2 permits an overall number of 3,808 to 3,838 head of

4    cattle and horses, depending on the season, for a total of 44,186 AUMs. The alternative

5    includes a number of new improvements, including: 16.7 miles of new fencing; the

6    installation of 27 water storage tanks and 51 water troughs; the construction of 46.5 miles

7    of pipeline to transport water; the installation of five new wells, three solar panels to

8    generate the wells, one trick tank, three new cattleguards, and four new corrals.

9           103.      The Forest Service failed to consider multiple other suitable and

10   diverse alternatives which were suggested by the public, including, but not limited to: an

11   alternative that eliminates grazing in wilderness; an alternative that specifically addresses

12   the issue of wildlife/livestock conflict; an alternative that considered environmental

13   impacts on an allotment-by-allotment approach;  an alternative that considered

14   maintaining some allotments as vacant without transitioning permitted use elsewhere; an

15   alternative that included reduced stocking levels; an alternative that included shortened

16   season durations; an alternative that included added periods of pasture rest; an alternative

17   that included full riparian area exclusion; and/or an alternative that included

18   requirements that no new water or fencing infrastructure be constructed.

19          104.      The Forest Service's failure to consider an adequate range of

20   alternatives is "arbitrary, capricious, an abuse of discretion, or otherwise not in

21   accordance with law" and/or constitutes "agency action unlawfully withheld or

22   unreasonably delayed." 5 U.S.C. §§ 706(2)(A), 706(1).

**THIRD CAUSE OF ACTION**

**(Violation of NEPA – Failure to adequately disclose, consider, and analyze**

**the direct, indirect, and cumulative impacts)**

105.     Plaintiffs incorporate all preceding paragraphs.

106.     NEPA requires the Forest Service to adequately disclose, consider, and analyze the direct and indirect effects and cumulative impacts of its decisions to authorize continued grazing on the Forests. 42 U.S.C. §§ 4332(2)(C)(i)–(v); 40 C.F.R. §§ 1502.14(a), 1502.16, 1508.7, 1508.8, 1508.14. Direct effects are caused by the action and occur at the same time and place. 40 C.F.R. § 1508.8. Indirect effects are caused by the action and occur later in time or farther removed in distance, but are reasonably foreseeable. *Id.* Cumulative impacts are the impacts on the environment that result "from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7. The Forest Service is required to provide a hard look analysis of these impacts before there are "any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." 42 U.S.C. § 4332(C)(v); *see also* 40 C.F.R. §§ 1501.2, 1502.5(a).

107.     The EA for the Stateline project fails to take a hard look at how livestock grazing may directly, indirectly, and/or cumulatively impact the Forests' resources.

108.     The EA for the Stateline project fails to take a hard look at how livestock grazing (and other aspects of the project) may directly, indirectly, and/or cumulatively impact Mexican wolves and the species' recovery and habitat.

109.     The EA for the Stateline project fails to take a hard look at how livestock grazing (and other aspects of the project) may directly, indirectly, and/or cumulatively impact wilderness, inventoried roadless area, and other special management area values.

110.     The EA for the Stateline project fails to take a hard look at how livestock grazing (and other aspects of the project) may directly, indirectly, and/or cumulatively impact water resources, including existing water rights.

111.     The EA for the Stateline project fails to take a hard look at how livestock grazing (and other aspects of the project) may directly, indirectly, and/or cumulatively impact forest resources and habitats that are already impacted by drought and climate change.

112.     The EA for the Stateline project fails to take a hard look at how livestock grazing (and other aspects of the project) may directly, indirectly, and/or cumulatively impact the associated, detrimental impact of trespass livestock.

113.     The Forest Service's failure to analyze the direct, indirect, and cumulative impacts to the Forests' resources is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and/or constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706(2)(A), 706(1).

//

1                                   **REQUEST FOR RELIEF**

2           WHEREFORE, Plaintiffs request that this Court:

3    A. Declare the Forest Service has violated and continues to violate the law as alleged

4        above;

5    B. Set aside and vacate the Forest Service's EA and three Decision Notices/FONSIs for

6        the Stateline project;

7    C. Remand this matter back to the Forest Service with instructions to comply with the

8        law;

9    D. Issue other relief Plaintiffs may subsequently request;

10    E. Issue other relief this Court deems necessary, just, or proper;

11    F. Award Plaintiffs their reasonable attorneys' fees, costs and expenses of litigation;

12

13           Respectfully submitted this 14th day of January, 2021.

                                            /s/ Kelly E. Nokes
                                            Kelly E. Nokes
                                            *applicant for pro hac vice*

                                            /s/ Matthew K. Bishop
                                            Matthew K. Bishop
                                            *applicant for pro hac vice*

                                            *Attorneys for Plaintiffs*